Robert P. Goe – State Bar No. 137019
Charity J. Manee – State Bar No. 286481
**GOE FORSYTHE & HODGES LLP**
17701 Cowan, Bldg. D, Suite 210
Irvine, CA 92614
rgoe@goeforlaw.com
cmanee@goeforlaw.com
Telephone: (949) 798-2460
Facsimile: (949) 955-9437

Attorneys for Official Committee of Unsecured Creditors

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No. 8:22-bk-12142-SC |
| 2ND CHANCE INVESTMENT GROUP, LLC, | Chapter 11 Case |
| Debtor and Debtor in Possession. | Adv. Case No.: 8:24-ap_____-SC |
| | **COMPLAINT FOR:** |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS, | 1) **AVOIDANCE OF TRANSFERS PURSUANT TO 11 U.S.C. § 544(b) AND CAL. CIV. CODE §§ 3439.04(a)(2), 3439.05;** |
| Plaintiff, | 2) **AVOIDANCE OF TRANSFERS PURSUANT TO 11 U.S.C. § 548(a)(1)(B);** |
| -vs- | 3) **AVOIDANCE OF TRANSFERS PURSUANT TO 11 U.S.C. § 544(b) AND CAL. CIV. CODE §§ 3439.04(a)(1);** |
| LAMAR CENTRAL OUTDOOR, LLC, D/B/A LAMAR ADVERTISING OF SAN BERNARDINO, LAMAR MEDIA CORP., FOSTER & FOSTER REALTY INC., ADVANCE REAL ESTATE & CONSTRUCTION SOLUTIONS CORPORATION, RAYSHON ANDREW FOSTER, an individual, SONJA FOSTER, an individual and DOES 1-10, | 4) **AVOIDANCE OF TRANSFERS PURSUANT TO 11 U.S.C. § 548(a)(1)(A);** |
| Defendants. | 5) **RECOVERY OF AVOIDED TRANSFERS PURSUANT TO 11 U.S.C. § 550; and** |
| | 6) **DISALLOWANCE OF CLAIMS PURSUANT TO 11 U.S.C. § 502** |

The Official Committee of Unsecured Creditors of the bankruptcy estate of 2ND Chance Investment Group, LLC ("Debtor"), and Plaintiff in this adversary proceeding ("Committee" or "Plaintiff"), respectfully alleges as follows:

## I.    SUBJECT MATTER JURISDICTION AND VENUE

1.      This adversary proceeding arises in and relates to the Debtor's pending chapter 11 bankruptcy case entitled *In re 2nd Chance Investment Group, LLC.*, Case No. 8:22-bk-12142-SC ("Bankruptcy Case").

2.      On December 21, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the Bankruptcy Case.

3.      This Court has jurisdiction to adjudicate the issues raised in this adversary proceeding under 28 U.S.C. § 1334.

4.      This action is a core proceeding under 28 U.S.C. § 157(b).  Pursuant to Federal Rule of Bankruptcy Procedure 7008, Plaintiff consents to the Bankruptcy Court entering final a judgment and/or order.

5.      This adversary proceeding involves property worth more than $1,000 and does not involve a consumer debt.  Venue in this judicial district is appropriate under 28 U.S.C. §§ 1409(a) and/or (c) because the Bankruptcy Case is pending in the Central District of California.

6.      To the extent Plaintiff asserts claims under 11 U.S.C. § 544, Plaintiff asserts that there exists in this case one or more creditors holding unsecured claims allowable under 11 U.S.C. § 502 or not allowable under 11 U.S.C. § 502(e), who can avoid the prospective transfers as set forth hereinafter under California or other applicate state or federal law.

## II.    THE PARTIES

7.      Plaintiff was appointed as the Creditors' Committee on February 6, 2023.  Pursuant to the Bankruptcy Court's *Order Approving Stipulation Between Debtor and the Official Committee of Unsecured Creditors Granting the Committee Standing to Pursue Certain Avoidance Actions on Behalf of the Estate* entered on March 22, 2023 in the Bankruptcy Case at Docket Entry No. 77, the terms of which were incorporated into the *Debtor's First Amended Liquidating Plan as Modified* [Docket No. 296 in the Bankruptcy Case] (the "Plan"), which was

confirmed by the *Order Confirming Debtor's First Amended Chapter 11 Liquidating Plan As Modified* entered on February 12, 2024 [Docket No. 381 in the Bankruptcy Case] ("Confirmation Order"), Plaintiff is the representative of the bankruptcy estate whose authority, subject to limitations not relevant to the claims stated herein, includes, but is not limited to pursuing, suing on, and settling all actions, arising under Bankruptcy Code sections 502, 510, 544, 545, 547, 548, 549, 550 and 553, or any avoidance actions under applicable non-bankruptcy law. Plaintiff is also empowered to prosecute, pursue, and resolve all claims held by the estate and objections to claims in the Bankruptcy Case.

8.     Plaintiff brings this action solely for the benefit of the estate created by the liquidating trust formed pursuant to the Plan and Confirmation Order, and the beneficiaries thereof, which include the Debtor's creditor body.

9.     By virtue of Plaintiff consisting of a committee of creditors, Plaintiff may not have personal knowledge of many of the facts alleged in this Complaint and, therefore, where appropriate, alleges certain facts on information and belief. Plaintiff reserves its right to amend this Complaint to allege additional claims against the Defendants (defined below) and to challenge and recover transfers made to or for the benefit of the Defendants in addition to those transfers alleged in the Complaint.

10.    On and before the Petition Date, and continuing to the present, on information and belief, Defendant Lamar Central Outdoor, LLC d/b/a Lamar Advertising of San Bernardino ("LCO") is an entity doing business in the State of California, and is located in San Bernardino, California. Plaintiff is further informed and believes LCO is in the advertising business.

11.    On and before the Petition Date, and continuing to the present, on information and belief, Defendant Lamar Media Corp. ("LMC") is a Delaware corporation that is registered to do business in the State of California. Plaintiff is further informed and believes LMC is in the advertising business.

12.    On information and belief, Defendant Advance Real Estate & Construction Solutions Corporation ("Advance") is a California corporation formed in 2017 and owned, at all times, by Rayshon Foster ("R. Foster"), possibly jointly with Sonja Foster ("S. Foster"), the

1   current or former spouse of R. Foster.

2       13.     On information and belief, Defendant Foster & Foster Realty Company, Inc.

3   (F&FRC") was a real estate related entity formed in 2018 in the State of California by S. Foster

4   and R. Foster, and at all times relevant to this Complaint, was exclusively owned and operated by

5   R. Foster and S. Foster.

6       14.     Defendant R. Foster is an individual and, according to the Debtor's List of Equity

7   Security Holders [Docket No. 1 in the Bankruptcy Case at page 10 of 54], is the sole member of

8   the Debtor and at all times was a person in control of the Debtor.

9       15.     S. Foster is or was, at all times relevant to this Complaint, the spouse of R. Foster

10  (together, the "Fosters") and upon information and belief, was a person in control of the Debtor.

11  Additionally, notwithstanding the Debtor's filed List of Equity Security Holders, the Debtor

12  asserted in filings in the Bankruptcy Case [Docket Nos. 268 and 269] that S. Foster is a 48%

13  owner of the Debtor.

14      16.     LCO, LMC, Advance, F&FRC and the Fosters shall from hereon, at times,

15  collectively be referred to as the "Defendants."

16                          **III.   GENERAL ALLEGATIONS**

17      17.     The allegations contained in paragraphs 1-15, inclusive, are re-alleged and

18  incorporated herein by this reference, as though set forth in full.

19      18.     LCO filed Proof of Claim number 47 in the Bankruptcy Case (the "Claim"),

20  alleging an indebtedness to it owed by the Debtor in the amount of $1,164,618.17 on account of

21  "Breach of Negotiated Settlement and Release Agreement" (from hereon, the "Agreement"). A

22  true and correct copy of the Claim is attached hereto as **Exhibit "1"** and is incorporated herein.

23      19.     The attachments to the Claim included a complaint reflecting a lawsuit filed by

24  LCO against Debtor and F&FRC ("LCO Complaint").

25      20.     Paragraph 8 of the LCO Complaint states "On or around June 28, 2022, Lamar

26  entered into a Negotiated Settlement and Release Agreement with 2ND CHANCE and FOSTER

27  (the "Agreement") whereby 2ND CHANCE and FOSTER agreed to pay Lamar a total of

28  $1,286,803.17 for a balance due and owing to Lamar for services provided by Lamar to 2ND

1    CHANCE and FOSTER."

2    21.    Paragraph 11 of the LCO Complaint states, "On or about July 7, 2022, 2ND

3    CHANCE and FOSTER paid Lamar $87,200.00 Pursuant to the Agreement."

4    22.    Paragraph 12 of the LCO Complaint states, "On or about August 5, 2022, 2ND

5    CHANCE and FOSTER paid Lamar $34,985."

6    23.    The payment described in paragraphs 21 and 22 hereinabove shall, from hereon, be

7    collectively referred to as the "LCO Transfers".

8    24.    The Agreement is also attached to the Claim, and therein, identified Debtor as

9    "Lamar Customer #773337" and F&FRC as "Lamar Customer # 789793".

10    25.    The Agreement defined the term "Parties" as Debtor and Lamar only.

11    26.    According to the face of the Agreement, Debtor was the only party liable to make

12    payments to Lamar under the same. However, F&FRC was a signatory to the Agreement.

13    27.    During the four years prior to the Petition Date, the Debtor was caused to transfer

14    funds directly to LMC in the aggregate amount of at least $636,159.98 ("LMC Transfers").

15    28.    The Transfers were transfers of money from the Debtor's corporate American

16    Express credit card ("Amex Card").

17    29.    An itemized listing of the LMC Transfers, including details describing salient

18    aspects of each individual transfer, is attached hereto as **Exhibit "2"** and is incorporated herein.

19    30.    Plaintiff is informed and believes that, during the four years leading up to the

20    Petition Date, the Fosters caused the Debtor to make the Transfers for their personal financial

21    benefits or for the benefits of Advance and F&FRC. The Transfers were not made for any

22    legitimate business purpose of the Debtor.

23    31.    Indeed, R. Foster admitted to using the Debtor's funds and property to pay for

24    advertising expenses of non-Debtor entities which he and/or S. Foster owned.

25    32.    The Transfers were made directly to the Defendants, respectively, for the benefit of

26    the Fosters, Advance, and/or F&FRC.

27    33.    Plaintiff is informed and believes that the Transfers were intended to disguise the

28    Fosters' plan to strip the Debtor of its assets and hide the value of those assets or money under

third party names in order to defraud creditors by siphoning assets of the Debtor and using those for the personal benefits of the Fosters or other entities they owned, as well as to hinder, delay and avoid paying Debtor's genuine creditors.

34.     Upon information and belief, at all times relevant to this Complaint, creditors of the Debtor (holding unsecured claims allowable within the meaning of Sections 502 and 544(b) of the Bankruptcy Code) existed that could have avoided the Transfers described herein under applicable state voidable transfer law including, but not limited to, California Civil Code § 3439 *et seq*.

## FIRST CLAIM FOR RELIEF

**(Avoidance of Fraudulent/Voidable Transfers Pursuant to 11 U.S.C. § 544(b)(1); Cal. Code §§ 3439.04(a)(2), 3439.05 Against All Defendants)**

35.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 30 as though set forth in full.

36.     The LCO Transfers and LMC Transfers (collectively, the "Transfers") were transfers of the Debtor's property made within four (4) years of the Petition Date to or for the benefit of the Defendants in the amounts described hereinabove and set forth in Exhibits 1 and 2, respectively.

37.     The Agreement was an obligation incurred by the Debtor within the four (4) years preceding the Petition Date, indeed relatively close to the Petition Date as it is dated in June of 2022.

38.     When the Transfers were made and the Agreement was entered into, the Debtor was aware of its mounting debts.

39.     Upon information and belief, Debtor received less than reasonably equivalent value in exchange for the Transfers and the Agreement, because the Transfers involved Debtor being caused to pay for advertising expenses incurred by or for the benefit of the Fosters, Advance, and/or F&FRC and the Agreement saddled the Debtor with debt for advertising services it did not receive.

40.     The Debtor was insolvent when the Transfers were made or it became insolvent as a result of the Transfers.

41.     Debtor was insolvent when it entered into the Agreement or it became insolvent as a result of the Transfers.

42.     Indeed, when the Debtor filed its bankruptcy petition, it had accumulated over $8.7 million in unpaid liabilities and its attempted liquidation of its real estate assets yielded less than half a million dollars in net proceeds. Upon information and belief, during the entire period during which the Debtor was operating, the Debtor owed far more to creditors, secured and unsecured, than it ever owned in valuable property. This is because Debtor tended to acquire real properties using secured loans, including purchase money loans, but also was incurring substantial unsecured liabilities to acquire these properties. During its operations, Debtor was unable to return payment of principal to its unsecured lenders, and defaulted in payment of its secured loans. Debtor also owned no other assets of any substantial value beyond real estate and cars, both categories of which assets had little to no equity due to Debtor having acquired the same with using secured debt.

43.     At the time the Transfers were made and the Agreement was incurred, the Debtor intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

44.     The Transfers and Agreement are avoidable pursuant to 11 U.S.C. § 544(b) and Cal. Civ. Code §§ 3439.04(a)(2), 3439.05.

## SECOND CLAIM FOR RELIEF

### (Avoidance of Fraudulent Transfers Pursuant to 11 U.S.C. §548(a)(1)(B) Against All Defendants)

45.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 44 as though set forth in full.

46.     The Transfers were transfers of the Debtor's property and the Agreement was a liability incurred by the Debtor.

47.     As reflected in Exhibits 1 and 2 and described hereinabove, the Transfers were made within two (2) years preceding the Petition Date (i.e., from December 21, 2020 through

December 21, 2022) and the Agreement was a liability incurred within the two (2) years preceding the Petition Date.

48.     When the Transfers were made and the Agreement was entered into, the Debtor was aware of its mounting debts.

49.     Upon information and belief, Debtor received less than reasonably equivalent value in exchange for the Transfers and the Agreement, because the Transfers involved Debtor being caused to pay for advertising expenses incurred by or for the benefit of the Fosters, Advance, and/or F&FRC and the Agreement saddled the Debtor with debt for advertising services it did not receive.

50.     Debtor was insolvent when the Transfers were made or became insolvent as a result of the Transfers.

51.     Debtor was insolvent when it entered into the Agreement or it became insolvent as a result of the Transfers.

52.     At the time the Transfers were made and the Agreement was incurred, the Debtor intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

53.     The Transfers and Agreement are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

### THIRD CLAIM FOR RELIEF

**(Avoidance of Fraudulent/Voidable Transfers Pursuant to 11 U.S.C. § 544(b)(1); Cal. Code §§ 3439.04(a)(1) Against All Defendants)**

54.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 53 as though set forth in full.

55.     The California's Uniform Voidable Transactions Act provides, inter alia, that a transfer is fraudulent as to a creditor, regardless of when the creditor's claim arose, if the Debtor made the transfer with the actual intent to hinder, delay, or defraud any creditor. (*See* California Civil Code §3439.04 California Civil Code §3439.04(a)(1).)

56.     As long as the debtor had the requisite fraudulent intent, a transfer will qualify as

1    an actually fraudulent transfer, even if reasonably equivalent value was provided. Because

2    §3439.04(a)(1)'s language regarding the debtor's state of mind is in the disjunctive, intent to

3    defraud a creditor is not required. Either an intent to hinder or an intent to delay a creditor will also

4    suffice.

5          57.    The Transfers were transfers of the Debtor's property made within four (4) years of

6    the Petition Date. The Transfers were made on the dates and in the amounts described above and

7    reflected on Exhibits 1 and 2.

8          58.    The Agreement was an obligation incurred by the Debtor within the four (4) years

9    preceding the Petition Date, indeed relatively close to the Petition Date as it is dated in June of

10   2022.

11         59.    The Transfers were all made for the benefit of the Fosters, Advance and/or

12   F&FRC, who are all statutory insiders of the Debtor.

13         60.    The Agreement was entered into for the benefit of the Fosters, Advance and/or

14   F&FRC.

15         61.    The Transfers were made and the Agreement was entered into by Debtor with the

16   actual intent to hinder, delay or defraud Debtor's legitimate creditors and were payments made

17   improperly to enrich the Fosters at the expense of the Debtor's legitimate creditors, by causing the

18   Debtor to pay for services it did not receive but which were received by the Fosters, Advance or

19   F&FRC.

20         62.    The Fosters, both authorized users of the Debtor's Amex Card, habitually used the

21   Debtor's funds and property to fund their lavish lifestyle or operations of their non-Debtor entities,

22   causing the Debtor to pay hundreds of thousands of dollars toward their own personal credit card

23   liabilities or for their own enrichment or that of their non-Debtor entities, Advance and F&FRC,

24   including by making the Transfers and saddling the Debtor with the Agreement. By way of

25   example of the pattern and practice of the Fosters' usage of the Debtor's funds and property, they

26   caused the Debtor to buy personal jewelry for Mrs. Foster, paid their child's private school tuition

27   with Debtor's funds, paid for personal vehicles, and received well over a million dollars in cash

28

1   from the Debtor in addition to these sums. All of this was done when the Debtor's creditors were

2   being left unpaid and/or without prospect of payment in the future.

3       63.     The Transfers and Agreement were concealed in that Debtor failed to disclose them

4   in its Statement of Financial Affairs or otherwise, although Rayshon Foster has since admitted to

5   paying for personal expenses with the Debtor's property as well as using the Debtor's funds to

6   purchase advertising for non-Debtor entities.

7       64.     The Transfers were made and Agreement entered into in furtherance of the scheme

8   of the Fosters, the persons in control of the Debtor, to defraud the creditors of the Debtor.

9       65.     Based on the foregoing, Plaintiff is entitled to an order and/or judgment avoiding

10  the Transfers and Agreement.

11                          **FOURTH CLAIM FOR RELIEF**

12      **(Avoidance of Fraudulent/Voidable Transfers Pursuant to 11 U.S.C. § 548(a)(1),**

13                          **Against All Defendants)**

14      66.     Plaintiff realleges and incorporates herein by reference each and every allegation

15  contained in paragraphs 1 through 65 as though set forth in full.

16      67.     Bankruptcy Code section 548(a)(1)(A) provides that a transfer is fraudulent as to a

17  creditor if the Debtor made the transfer with the actual intent to hinder, delay, or defraud any

18  creditor.

19      68.     The Transfers were transfers of the Debtor's property made within two (2) years

20  preceding the Petition Date for the benefit of the Fosters, Advance, and/or F&FRC.

21      69.     The Agreement was an obligation incurred by the Debtor within two (2) years

22  preceding the Petition Date for the benefit of the Fosters, Advance, and/or F&FRC.

23      70.     The Transfers were made with the actual intent to hinder, delay or defraud Debtor's

24  legitimate creditors.

25      71.     The Agreement was entered into by Debtor with the actual intent to hinder, delay or

26  defraud Debtor's legitimate creditors.

27      72.     Based on the foregoing, Plaintiff is entitled to an order and/or judgment avoiding

28  the Transfers and Agreement.

**FIFTH CLAIM FOR RELIEF**

**(Recovery of Voidable Transfers Pursuant to 11 U.S.C. § 550 Against All Defendants)**

73.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 72 as though set forth in full.

74.     Based on the foregoing claims for relief and the facts set forth herein, the Transfers are all recoverable by Plaintiff.

75.     The Transfers are recoverable from the Defendants pursuant to 11 U.S.C. § 550(a) or Plaintiff is entitled to a judgment requiring payment by Defendants to Plaintiff of the value of the Transfers.

**SIXTH CLAIM FOR RELIEF**

**(Disallowance of Claims Pursuant to 11 U.S.C. § 502 Against All Defendants)**

76.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 75 as though set forth in full.

77.     Defendants have not paid the amount of the Transfers, or any part of them, nor turned over such property, for which Defendants are liable under 11 U.S.C. §550.

78.     Pursuant to 11 U.S.C. § 502(d), any and all claims of Defendants and/or their assignees against the Debtor's estate and/or liquidating trust must be disallowed until such time as Defendants pay to Plaintiff an amount equal to the aggregate amount of all of the Transfers, plus interest thereon and costs.

79.     Pursuant to 11 U.S.C. § 502(j), any and all claims of Defendants and/or their assignees against the Debtor's estate previously allowed must be reconsidered and disallowed until such time as Defendants pay to Plaintiff an amount equal to the aggregate amount of all of the Transfers which have been avoided under 11 US.C. § 550.

**PRAYER**

**WHEREFORE**, Plaintiff prays for judgment against all Defendants as follows:

**ON THE FIRST, SECOND, THIRD AND FOURTH CLAIMS FOR RELIEF**

1.     For judgment avoiding the Transfers and the Agreement.

\\\

11

## ON THE FIFTH CLAIM FOR RELIEF

2.      For recovery of the Transfers or their value in the form of a money judgment.

## ON THE SIXTH CLAIM FOR RELIEF

3.      Judgment disallowing, in accordance with 11 U.S.C. §§ 502(d) and (j), any claims held by Defendants and/or their assignees until Defendants satisfy the judgment granted in this action.

## ON ALL CLAIMS FOR RELIEF

4.      For interest as permitted by law from the date of the Transfers;

5.      For costs of suit incurred herein, including, without limitation, attorneys' fees; and

6.      For such other and further relief as the Court deems just and proper.

Dated: December 19, 2024                    **Respectfully submitted by,**

                                            **GOE FORSYTHE & HODGES LLP**


                                            By: /s/*Robert P. Goe*
                                                Robert P. Goe
                                                Charity J. Manee
                                                Counsel to Official Committee of
                                                Unsecured Creditors

# EXHIBIT 1

# EXHIBIT 1

**Fill in this information to identify the case:**

| Debtor 1 | 2nd Chance Investment Group, LLC |
|---|---|

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: Central District of California

Case number    8:22-bk-12142-SC

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1:    Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | Lamar Central Outdoor, LLC dba Lamar Advertising of San Bernardino<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? _____ |

| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|---|
| | Law Office of Lazaro E. Fernandez, Inc.<br>Name | Lamar Central Outdoor, LLC<br>Name |
| | 3600 Lime Street, Suite 326<br>Number          Street | 449 East Parkcenter Circle South<br>Number          Street |
| | Riverside          CA          92501<br>City          State          ZIP Code | San Bernardino          CA          92408<br>City          State          ZIP Code |
| | Contact phone 951-684-4474 | Contact phone 909-799-1010 |
| | Contact email 951-684-4625 | Contact email tporter@lamar.com |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br><br>__ __ — __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ — __ __ __ __ | |

| | |
|---|---|
| 4. Does this claim amend one already filed? | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____          Filed on _____<br>                                                                                                MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes. Who made the earlier filing? _____ |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**    $_____1,164,618.17__  **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Breach of Negotiated Settlement and Release Agreement

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $_____

**Amount of the claim that is secured:**    $_____

**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

    ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

    ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

    ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

    ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

    ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

    ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.

**Amount entitled to priority**

$ _____

$ _____

$ _____

$ _____

$ _____

$ _____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  04/04/2023
           MM / DD / YYYY

Signature

**Print the name of the person who is completing and signing this claim:**

| Name | C. | Todd | Porter |
|---|---|---|---|
| | First name | Middle name | Last name |

Title    Vice-President and General Manager

Company    Lamar Central Outdoor, LLC dba Lamar Advertising of San Bernardino

            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address    449 East Parkcenter Circle South

            Number   Street

            San Benardino        CA    92408

            City                  State    ZIP Code

Contact phone    909-799-1010        Email t.porter@lamar.com

1 | Theodore K. Stream, State Bar # 138160
Summer M. DeVore, State Bar # 323656
2 | **STREAM KIM HICKS WRAGE & ALFARO, PC**
3403 Tenth Street, Suite 700
3 | Riverside, CA 92501-3641
Telephone: (951) 783-9470
4 | Facsimile: (951) 783-9475

5 | Attorneys for Plaintiff,
LAMAR CENTRAL OUTDOOR, LLC dba
6 | LAMAR ADVERTISING OF SAN BERNARDINO

7 | **SUPERIOR COURT OF CALIFORNIA**

8 | **COUNTY OF SAN BERNARDINO – SAN BERNARDINO DISTRICT**

9
10 | LAMAR CENTRAL OUTDOOR, LLC, a ) CASE NO.
limited liability company dba LAMAR )
11 | ADVERTISING OF SAN BERNARDINO, )
)
12 |     Plaintiff, ) **COMPLAINT FOR BREACH OF**
) **CONTRACT**
13 | vs. )
)
14 | 2ND CHANCE INVESTMENT GROUP, LLC )
a limited liability company; FOSTER & )
15 | FOSTER REALTY, INC., California )
corporation, and DOES 1 through 100, )
16 | inclusive, )
)
17 |     Defendants. )
_____ )

18 |     Plaintiff, LAMAR CENTRAL OUTDOOR, LLC, a limited liability company dba

19 | LAMAR ADVERTISING OF SAN BERNARDINO alleges:

20 | **I.**

21 | **PRELIMINARY ALLEGATIONS**

22 |     1.    Plaintiff, LAMAR CENTRAL OUTDOOR, LLC dba LAMAR ADVERTISING

23 | OF SAN BERNARDINO ("Plaintiff" or "Lamar"), is a limited liability company organized and

24 | existing under the laws of the State of Delaware and authorized to business in the State of

25 | California. Lamar also does business in San Bernardino County under the fictitious business

26 | name of Lamar Advertising of San Bernardino.

27 |     2.    Plaintiff is informed and believes, and thereon alleges, that at all times herein

28 | mentioned, Defendant 2ND CHANCE INVESTMENT GROUP, LLC ("Defendant" or "2ND

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE 700
RIVERSIDE, CA 92501
951-783-9470

1
COMPLAINT FOR BREACH OF CONTRACT

L375/000 - 448504.1

CHANCE") was, and is, a limited liability company organized and existing under the laws of the State of California, with its principal place of business in the City of Ontario, County of San Bernardino, State of California.

3.      Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendant FOSTER & FOSTER REALTY, INC. ("Defendant" or "FOSTER") was, and is, a corporation organized and existing under the laws of the State of California, with its principal place of business in the City of Ontario, County of San Bernardino, State of California.

4.      The true names and/or capacities, whether individual, corporate, associate or otherwise, of the Defendants sued herein as DOES 1 through 100, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names.  Plaintiff is informed and believes, and thereon alleges, that some or all of said fictitiously named Defendants have participated in the hereafter alleged wrongful conduct, as set forth herein, and are responsible, in whole or in part, for the damages alleged to have been suffered by Plaintiff.  Plaintiff will amend this Complaint to state their true names and capacities when the same have been ascertained. Plaintiff intends all further references in this Complaint to "Defendants" or "Defendants, and each of them," to expressly include reference to each fictitiously named Defendant.

5.      Plaintiff is further informed and believes and thereon alleges that at all times herein mentioned, some or all of said Defendants were the officers, directors, principals, agents, servants, employees and/or authorized representatives of some or each and every other Defendant, and each of them; and that, in doing the actions herein alleged or in not doing those acts herein alleged not to have been performed by omission, said Defendants were acting within the course and scope of such agency and/or authority.

6.      Venue is proper in this Court pursuant to Code of Civil Procedure §§ 395 and 395.5 because Defendants reside in San Bernardino County, California and the contract was breached in San Bernardino County, California.

///

///

///

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE 700
RIVERSIDE, CA  92501
951-783-9470

2

COMPLAINT FOR BREACH OF CONTRACT

L375/000 - 448504.1

Exhibit "1"  Page 2 of 13
Page 5 of 18

EXHIBIT 1

## II.

### GENERAL ALLEGATIONS

7. Lamar is an outdoor advertising company with an office in San Bernardino, California.

8. On or around June 28, 2022, Lamar entered into a Negotiated Settlement and Release Agreement with 2ND CHANCE and FOSTER (the "Agreement") whereby 2ND CHANCE and FOSTER agreed to pay Lamar a total of $1,286.803.17 for a balance due and owing to Lamar for services provided by Lamar to 2ND CHANCE and FOSTER. A true and correct copy of the Agreement is attached hereto as Exhibit A.

9. Under the Agreement, 2ND CHANCE and FOSTER were to pay Lamar $64,340.16 by July 5, 2022. Thereafter, and beginning on August 5, 2022, 2ND CHANCE and FOSTER were to pay Lamar $34,927.51, with the final payment of $34,92.67, for a period of 35 consecutive months, as set forth in the Payment Schedule attached to the Agreement as Exhibit A. Any payments made were to be applied to the then next-due monthly payment.

10. Pursuant to the Payment Schedule, $34,927.51 was to be paid to Lamar from 2ND CHANCE and FOSTER by August 5, 2022, $34,927.51 was to be paid to Lamar from 2ND CHANCE and FOSTER by September 5, 2022, $34,927.51 was to be paid to Lamar from 2ND CHANCE and FOSTER by October 5, 2022, and so on.

11. On or about July 7, 2022, 2ND CHANCE and FOSTER paid Lamar $87,200.00. Pursuant to the Agreement, $64,340.16 was applied to the payment due July 5, 2022 and the remaining balance of $22,859.14 was applied to the next-due monthly payment on August 5, 2022.

12. On or about August 5, 2022, 2ND CHANCE and FOSTER paid Lamar $34,985.00. Pursuant to the Agreement, $34,927.51 was applied to the payment due August 5, 2022, and remaining balance of $22,917.33 was applied to next-due monthly payment on September 5, 2022.

13. On or about September 5, 2022, 2ND CHANCE and FOSTER did not make any payment to Lamar under the Agreement. Accordingly, pursuant to the Agreement, Lamar applied

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE 700
RIVERSIDE, CA 92501
951-783-9470

3

COMPLAINT FOR BREACH OF CONTRACT

L375/000 - 448504.1

EXHIBIT 1

Exhibit "1"  Page 3 of 13
Page 6 of 18

1   the remaining balance of $22,917.33 to the payment due on September 5, 2022. However, after

2   applying 2ND CHANCE and FOSTER's overpayment, there was still an outstanding balance of

3   $12,010.18 due and owing to Lamar.

4         14.    Pursuant to the Agreement, in the event of an untimely installment payment or a

5   failure to make a monthly payment, Lamar shall serve by mail a Notice of Failure to Pay.

6   Thereafter, 2ND CHANCE and FOSTER shall have 10 days from receive of the Notice of

7   Failure to Pay to cure any failure to pay any installment payments due and owning.

8         15.    On September 23, 2022, Lamar sent a written Notice of Failure to Pay to 2ND

9   CHANCE and FOSTER. 2ND CHANCE and FOSTER failed to cure.

10        16.    As of the date of filing this complaint, Lamar has not received any further

11  installment payments from 2ND CHANCE and FOSTER as required under the Agreement.

12        17.    Lamar performed its obligations under the Agreement, and 2ND CHANCE and

13  FOSTER made some payments towards the amounts owed to Lamar under the Agreement.

14  However, a balance of $1,164,618.17 is still owed by 2ND CHANCE and FOSTER to Lamar

15  under the Agreement.

### III.

### FIRST CAUSE OF ACTION
(Breach of Contract as to all Defendants and DOES 1 through 100)

19        18.    Plaintiff hereby repeats, realleges, and incorporates each and every allegation set

20  forth in paragraphs 1 through 17 as though they were set forth in full and at length herein.

21        19.    Lamar entered into an Agreement with 2ND CHANCE and FOSTER whereby

22  2ND CHANCE and FOSTER agreed to pay Lamar a total of $1,286.803.17 for a balance due

23  and owing to Lamar for services provided by Lamar to 2ND CHANCE and FOSTER.

24        20.    Lamar has performed all conditions, covenants, and promises required on its part

25  to be performed in accordance with the terms of the Agreement.

26        21.    Defendants have breached the Agreement by failing to make payments to Lamar

27  in accordance with the terms of the Agreement. 2ND CHANCE and FOSTER currently owe

28  Lamar an outstanding balance of $1,164,618.17 under the Agreement and have refused to pay

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE 700
RIVERSIDE, CA  92501
951-783-9470

4
COMPLAINT FOR BREACH OF CONTRACT

L375/000 - 448504.1

1   this outstanding amount despite Lamar's sending a written Notice of Failure to Pay.

2        22.      Pursuant to paragraph 9 of the Agreement, "If either Party incurs any legal fees

3   and/or costs and expenses in any proceeding to enforce the terms of this Agreement or any of its

4   rights provided hereunder, the prevailing Party shall be entitled to recover its reasonable

5   attorney's fees and costs and any court, arbitration, mediation, or other litigation expenses from

6   the other Party."

7        23.    As a result of 2ND CHANCE and FOSTER's breach, Lamar has suffered

8   damages in the amount of $1,164,618.17, plus interest from the date the contract was breached

9   and reasonable attorney's fees and costs.

**PRAYER**

11      **WHEREFORE**, Plaintiff prays for relief against Defendants, and each of them, as

12   follows:

**As to the First Cause of Action for Breach of Contract as to Defendants:**

14   1.      For the sum of $1,164,618.17;

15   2.      For pre-judgment interest at the earliest date and the highest rate permitted by

16   law;

17   3.      For reasonable attorney's fees according to proof;

18   4.      For costs of suit incurred herein; and

19   5.      For such other and further relief as this Court deems just and proper.

Respectfully submitted,

STREAM KIM HICKS WRAGE & ALFARO, PC

Dated: December 5, 2022      By:_____
Theodore K. Stream
Summer M. DeVore
Attorneys for Plaintiff,
LAMAR CENTRAL OUTDOOR, LLC dba
LAMAR ADVERTISING OF SAN
BERNARDINO

STREAM|KIM
ATTORNEYS AT LAW
3403 TENTH STREET,
STE 700
RIVERSIDE, CA 92501
951-783-9470

5

COMPLAINT FOR BREACH OF CONTRACT

L375/000 - 448504.1

EXHIBIT 1

Exhibit "1"   Page 5 of 13
Page 8 of 18

# EXHIBIT A

EXHIBIT 1

Exhibit "1"  Page 6 of 13
Page 9 of 18

## NEGOTIATED SETTLEMENT AND RELEASE AGREEMENT

This Negotiated Settlement and Release Agreement ("Agreement") is entered into as of the ___ day of June, 2022 (the "Effective Date"), by and between Lamar Central Outdoor, LLC, a California limited liability company DBA Lamar Advertising of San Bernardino ("Lamar") and 2nd Chance Investment Group (Lamar Customer # 773337) and Foster and Foster Realty (Lamar Customer # 789793) (collectively "2nd Chance"). Lamar and 2nd Chance are sometimes individually referred to as a "Party" and collectively as the "Parties".

WHEREAS, Lamar seeks payment from 2nd Chance of a balance due and owing in the amount of one million, two hundred eighty six thousand, eight hundred three dollars and seventeen cents ($1,286,803.17) exclusive of contractual late fees, interest, and reasonable attorneys' fees ("Total Alleged Damages");

WHEREAS, to avoid the time and expense of litigation, and without admitting or conceding any liability or wrongdoing of any kind, the Parties desire to settle and resolve the Total Alleged Damages, including all claims resulting therefrom ("Dispute");

NOW THEREFORE, in consideration of the promises, agreements, covenants and conditions herein, the adequacy and sufficiency of which are hereby expressly acknowledged by the Parties hereto;

IT IS HEREBY STIPULATED AND AGREED, by and between the Parties as follows:

1.    **Recitals True.** The recitals to this Agreement are true and correct and are incorporated herein by this reference.

2.    **Settlement Payment.** In full satisfaction of the Dispute, 2nd Chance shall make a total payment to Lamar in the amount of ($1,286,803.17) ("Total Payment"), payable as follows:

   (a)    **Monthly Payments.** On July 5, 2022, 2nd Chance shall pay $64,340.16. Thereafter, and beginning on August 5, 2022, and continuing thereafter on the fifth of each month ("Due Date") for a period of thirty-five (35) consecutive months, 2nd Chance shall pay, monthly payments in the amount of $34,927.51 and one payment of $34,927.67 ("Monthly Payments") as set forth on the payment schedule (the "Payment Schedule") attached hereto as Exhibit "A". Notwithstanding the dates of payment as appearing on the Payment Schedule, if any payment required hereunder is due on a Sunday or other day in which banks are not generally open in the United States, then such payment shall be automatically due on the next following day in which such banks are open for business.

   (b)    **Prepayment.** 2nd Chance may prepay the Total Payment or any Monthly Payment, in full or in part, at any time, without penalty. All payments made shall be applied to the then next-due Monthly Payment.

   (c)    In the event of an untimely installment payment or a failure to make any of the installment payments, Lamar shall serve by mail a Notice of Failure to Pay to counsel of record for 2nd Chance as identified in Section 13. 2nd Chance shall have 10 days from receipt of Notice of Failure to Pay to cure any failure to pay any installment payment due and owing.

   (d)    Payment Method. 2nd Chance shall make payments to Lamar according to the Payment Schedule via
         **American Express:**
         **Account Number**
         **CVV** 

EXHIBIT 1

Exhibit "1"  Page 7 of 13
Page 10 of 18

Expiration
Account Holder     Rayshon A. Foster

### 3.   Mutual Releases.

(a)    Lamar releases and forever discharges 2nd Chance, its attorneys, consultants, predecessors, successors, affiliates, subsidiaries, parents, representatives, insurers, assigns, agents, employees (both current and former), and all persons acting by, through or in any way on behalf of 2nd Chance, of and from any and all claims, debts, defenses, liabilities, costs, attorneys' fees, actions, suits at law or in equity, demands, contracts, expenses, damages, whether general, specific or punitive, exemplary, contractual or extra-contractual, and causes of action of any kind or nature, both known or unknown, which Lamar had, may now have or claim, or which Lamar may at any time hereafter have or claim, against 2nd Chance, in any way directly or indirectly, arose from or are connected with or which could have been asserted in connection with the facts and claims asserted in the Dispute; and the Parties further covenant and agree that this Agreement may be pleaded or asserted by or on behalf of 2nd Chance, and/or any other member of the 2nd Chance, as a defense and complete bar to any action or claim that may be brought against or involving the 2nd Chance or any member of the 2nd Chance, by anyone acting or purporting to act on behalf of Lamar with respect to any of the matters within the scope of this Agreement. Lamar's release of 2nd Chance is intended to be the mirror image of and equally as broad as 2nd Chance's release of Lamar.

(b)    2nd Chance releases and forever discharges Lamar, its attorneys, consultants, predecessors, successors, affiliates, subsidiaries, parents, representatives, insurers, assigns, agents, employees (both current and former), and all persons acting by, through or in any way on behalf of Lamar, of and from any and all claims, debts, defenses, liabilities, costs, attorneys' fees, actions, suits at law or in equity, demands, contracts, expenses, damages, whether general, specific or punitive, exemplary, contractual or extra-contractual, and causes of action of any kind or nature, both known or unknown, which 2nd Chance had, may now have or claim, or which 2nd Chance may at any time hereafter have or claim, against the Lamar, including, without limitation, the Dispute or any other claims which in any way, directly or indirectly, arose from or are connected with or which could have been asserted in connection with the facts and claims asserted in the Dispute; and the Parties further covenant and agree that this Agreement may be pleaded or asserted by or on behalf of the Lamar, and/or any other member of the Lamar, as a defense and complete bar to any action or claim that may be brought against or involving the Lamar or any member of Lamar, by anyone acting or purporting to act on behalf of 2nd Chance with respect to any of the matters within the scope of this Agreement. 2nd Chance's release of Lamar is intended to be the mirror image of and equally as broad as Lamar's release of 2nd Chance.

### 4.   Representations, Warranties of the Parties.

(a)    Each Party represents, as to itself, that:

(i)    It is duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation and is duly qualified and licensed in each jurisdiction where its activities require such qualification or license. The execution, performance and delivery of this Agreement have been duly authorized by it.

(ii)    This Agreement has been duly executed by each Party and constitutes the legal, binding, and valid obligation of such Party, enforceable against such Party in accordance with its terms.

(iii)    Each signatory below represents and warrants that they are duly authorized to execute this Agreement.

    (iv)   The execution, performance and delivery of this Agreement will not constitute a breach or default under any (A) provision of any of its governance documents, contracts, agreements, mortgages, trusts, or other documents or (B) any order, rule, regulation, or law of any jurisdiction that binds it.

5.    **Good Faith.** Each of the Parties hereto shall cooperate in good faith and shall execute and deliver to each other such further and other documentation as may be reasonably required to fully effect the Agreement.

6.    **Confidentiality; Non-Disparagement.**   (a)   As a material condition of this Agreement, the Parties expressly agree that except as otherwise expressly provided herein or as may be required by applicable law, regulation, or court order, the settlement that is the subject of this Agreement, including the Agreement, shall be and remain confidential. Notwithstanding the foregoing, the settlement and the Agreement may be disclosed by the Parties to their respective attorneys, financial advisors, accountants, and similar professionals to the extent necessary to fulfill or comply with legal, accounting, or regulatory obligations.

(b)   Following execution of this Agreement, neither Party shall disparage the other, nor make statements that impugn the reputation of the other; and each shall take all reasonable action to ensure that none of its officers, directors, members, managers, partners, employees, shareholders, or affiliates make such statements.

7.    **No Admissions.** It is expressly understood and agreed that the purpose of this Agreement is to compromise disputed claims, avoid further litigation, and buy peace, and that no representations made, or consideration given shall be construed as an admission of liability, all liability being expressly denied. The Parties acknowledge that both Parties deny any and all liability and fault, including but not limited to, any liability or fault in connection with the allegations raised in the Action and in connection with any and all matters related to the Action.

8.    **Governing Law/Venue.** This Agreement is deemed to be executed and delivered within the State of California, and its validity, construction and performance, as well as the rights and obligations of the Parties hereunder, shall be governed, construed, and enforced in accordance with the laws of the State of California. Any action to enforce or interpret the provisions of this Agreement shall be brought in San Bernardino County.

9.    **Attorney's Fees and Costs in Enforcement of the Agreement.** If either Party incurs any legal fees and/or costs and expenses in any proceeding to enforce the terms of this Agreement or any of its rights provided hereunder, the prevailing Party shall be entitled to recover its reasonable attorney's fees and costs and any court, arbitration, mediation, or other litigation expenses from the other Party.

10.    **Construction.** This Agreement shall be construed as if all Parties jointly prepared it, and any uncertainty or ambiguity in this Agreement shall not be interpreted against any one Party.

11.    **Severability.** Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision will be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

12.    **Entire Agreement.** This Agreement contains the entire agreement between the Parties and supersedes any and all prior agreements, arrangements, or understandings between the Parties. The Parties acknowledge and agree that there have been no representations, promises, understandings, or

agreements made by either Party as an inducement for the other to enter into this Agreement other than what are expressly set forth and contained in this Agreement, and the Parties hereby disclaim any reliance on any extra-contractual representation. The Parties further agree that neither evidence of prior promises, commitments, agreements, arrangements, or understandings, nor any oral statements of any kind, can be used to attempt to alter, amend, modify, or in any way change the written terms of this Agreement. Any amendment to or modification of this Agreement must be in a writing signed by an authorized representative of each Party.

13.     **Notice.** All notices, including a Ten-Day Notice, to be delivered under this Agreement shall be in writing and shall be deemed to have been given (a) when delivered by hand, (b) when transmitted by e-mail, (c) the day following the day on which the communication has been delivered prepaid to a reputable express mail or courier service, or (d) the third business day following the day on which the communication is sent by registered or certified mail, postage prepaid. All communications shall be delivered to the following addresses:

To 2nd Chance: 2nd Chance Investment Group,

        Attn: Ray Foster

        12812 Clemson Dr.

        Eastvale, CA 92880

        Rayfoster75@Yahoo.Com


With a copy to: Jeffrey Keyes, Esq.

        Walker Law Group, LLP

        10832 Laurel Street, Suite 204

        Rancho Cucamonga, California 91730

        jkeyes@walkerlawllp.com

14.     The Parties, in giving the releases provided for herein, represent, acknowledge and agree that Section 1542 of the California Civil Code provides as follows:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Parties specifically waive any and all rights and/or benefits they have or may have under California Civil Code Section 1542 or any other statutes or common law principle of similar substance and effect, and further represent, acknowledge and agree that their knowing and voluntary waiver of the provision of California Civil Code Section 1542 is an essential and material term of this Agreement, and that without such a waiver, this Agreement would not have been entered into.

This Settlement Agreement is binding upon the Parties, their heirs, employees, administrators, executors, beneficiaries, assigns, and successors in interest, and shall inure to the benefit of the Released Parties.

EXHIBIT 1

Exhibit "1"   Page 10 of 13
Page 13 of 18

15. **Binding Effect and Parties Bound.** This Agreement and all covenants and releases set forth herein shall be binding upon and shall inure to the benefit of the respective Parties hereto, their legal successors, heirs, assigns, partners, representatives, agents, attorneys, officers, directors, owners, members, shareholders, employees, affiliated corporations, and business entities.

16. **Amendments.** This Agreement cannot be modified or amended in any way, except in writing, signed by all of the Parties.

17. **Further Assurances.** The Parties agree to do all things necessary and execute any and all additional documents reasonably necessary to effectuate the intent of this Agreement.

18. **Execution and Counterparts.** This Agreement may be executed in one or more counterparts, and by facsimile and e-mail, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

19. **Admissibility of Release.** No evidence of this Agreement or any of its terms, and no evidence of any discussion or communications made or information or materials transmitted in the course of negotiations for this Agreement, shall be admissible or presented in any action or proceeding before any court, agency, or other tribunal, as evidence that a Party or any of their respective agents, shareholders, representatives or employees have committed any violation of contract or law, or are liable to any person for any reason other than for the enforcement of this Agreement.

20. **Effective Date.** This Agreement shall become effective upon signature by all Parties to this Agreement. The Parties have executed this Agreement on the date and year set opposite their signatures.

Date: 6·29·22, 2022

By: _____

Lamar Advertising Company of

San Bernardino-Riverside

Date: 6 - 27 , 2022

By: _____

2nd Chance Investment Group, LLC

Date: 6·27 , 2022

By: _____

Foster and Foster Realty

EXHIBIT 1                              Exhibit "1"  Page 11 of 13
                                       Page 14 of 18

**EXHIBIT A**

**PAYMENT SCHEDULE**

| DATE PAYMENT DUE | PAY AMOUNT AMOUNT | BALANCE |
|---|---|---|
| STARTING BALANCE | | $1,286,803.17 |
| July 5, 2022 | $64,340.16 | $1,222,463.01 |
| August 5, 2022 | $34,927.51 | $1,187,535.50 |
| September 5, 2022 | $34,927.51 | $1,152,607.99 |
| October 5, 2022 | $34,927.51 | $1,117,680.48 |
| November 5, 2022 | $34,927.51 | $1,082,752.97 |
| December 5, 2022 | $34,927.51 | $1,047,825.46 |
| January 5, 2023 | $34,927.51 | $1,012,897.95 |
| February 5, 2023 | $34,927.51 | $977,970.44 |
| March 5, 2023 | $34,927.51 | $943,042.93 |
| April 5, 2023 | $34,927.51 | $908,115.42 |
| May 5, 2023 | $34,927.51 | $873,187.91 |
| June 5, 2023 | $34,927.51 | $838,260.40 |
| July 5, 2023 | $34,927.51 | $803,332.89 |
| August 5, 2023 | $34,927.51 | $768,405.38 |
| September 5, 2023 | $34,927.51 | $733,477.87 |
| October 5, 2023 | $34,927.51 | $698,550.36 |
| November 5, 2023 | $34,927.51 | $663,622.85 |
| December 5, 2023 | $34,927.51 | $628,695.34 |
| January 5, 2024 | $34,927.51 | $593,767.83 |
| February 5, 2024 | $34,927.51 | $558,840.32 |
| March 5, 2024 | $34,927.51 | $523,912.81 |
| April 5, 2024 | $34,927.51 | $488,985.30 |
| May 5, 2024 | $34,927.51 | $454,057.79 |
| June 5, 2024 | $34,927.51 | $419,130.28 |
| July 5, 2024 | $34,927.51 | $384,202.77 |
| August 5, 2024 | $34,927.51 | $349,275.26 |
| September 5, 2024 | $34,927.51 | $314,347.75 |
| October 5, 2024 | $34,927.51 | $279,420.25 |
| November 5, 2024 | $34,927.51 | $244,492.73 |
| December 5, 2024 | $34,927.51 | $209,565.22 |
| January 5, 2025 | $34,927.51 | $174,637.71 |
| February 5, 2025 | $34,927.51 | $139,710.20 |

EXHIBIT 1

Exhibit "1"  Page 12 of 13
Page 15 of 18

| March 5, 2025 | $34,927.51 | $104,782.69 |
|---|---|---|
| April 5, 2025 | $34,927.51 | $69,855.18 |
| May 5, 2025 | $34,927.51 | $34,927.67 |
| June 5, 2025 | $34,927.67 | $0 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

3600 Lime Street, Suite 326, Riverside, CA 92501

A true and correct copy of the foregoing document entitled (*specify*): **Proof of Claim and supporting documentation** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) April 5, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**Amanda G. Billyard** abillyard@bwlawcenter.com
**Stephan M Brown** ECF@thebklawoffice.com, stephan@thebklawoffice.com;roslyn@thebklawoffice.com
**Dane W Exnowski** dane.exnowski@mccalla.com, bk.ca@mccalla.com,mccallaecf@ecf.courtdrive.com
**Lazaro E Fernandez** lef17@pacbell.net, lef-sam@pacbell.net;lefmari@
pacbell.net;OfficeLR74738@notify.bestcase.com;lefkarina@gmail.com
**Robert P Goe** kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
**David M Goodrich** dgoodrich@go2.law,
kadele@wgllp.com;lbracken@wgllp.com;wggllp@ecf.courtdrive.com;gestrada@wgllp.com
**Brandon J Iskander** biskander@goeforlaw.com, kmurphy@goeforlaw.com
**Charity J Manee** cmanee@goeforlaw.com, kmurphy@goeforlaw.com
**Queenie K Ng** queenie.k.ng@usdoj.gov
**Douglas A Plazak** dplazak@rhlaw.com
**Arvind Nath Rawal** arawal@aisinfo.com
**Gary B Rudolph** rudolph@sullivanhill.com,
bkstaff@sullivanhill.com;vidovich@ecf.inforuptcy.com;rudolph@ecf.courtdrive.com;james@ecf.courtdrive.com
**Richard L. Sturdevant** rich@bwlawcenter.com
**United States Trustee (SA)** ustpregion16.sa.ecf@usdoj.gov
**Fanny Zhang Wan** fwan@raslg.com
**Andy C Warshaw** awarshaw@bwlawcenter.com, warshaw.andyb110606@notify.bestcase.com
**Jennifer C Wong** bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) April 5, 2023, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| 2nd Chance Investment Group, LLC<br>600 W. Santa Ana Blvd.<br>PMB 5045<br>Santa Ana, CA 92701 | Financial Relief Law Center APC<br>1200 Main St., Ste C<br>Irvine, CA 92614 | Goe Forsythe & Hodges LLP<br>17701 Cowan Bldg D Ste 210<br>Irvine, CA 92614 |
|---|---|---|

☐ Service information continued on attached page

///
///
///
///

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**3.** **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) February 27, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 5, 2023 | Shelly Morin | |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

F 9013-3.1.PROOF.SERVICE

EXHIBIT 1                    Page 18 of 18

# EXHIBIT 2

# EXHIBIT 2

**In Re: 2nd Chance Investment Group, LLC**
**Case Number: 8:22-bk-12142-SC**
**Charge/Purchase related to Lamar Media Corp**
**Source: American Express Statements for Account xx2-91007**
**Date Range: June 11, 2021 to October 12, 2022**

| Account Name | Date | Amount | Statement Description |
|---|---|---|---|
| 2nd Chance Investment | 6/1/2021 | 31,695.98 | LAMAR MEDIA CORP 225-237-1068 LAADVERTISING |
| 2nd Chance Investment | 10/22/2021 | 3,000.00 | LAMAR MEDIA CORP 225-237-1068 LAADVERTISING |
| 2nd Chance Investment | 10/19/2021 | 28,595.00 | LAMAR MEDIA CORP 225-237-1068 LAADVERTISING |
| 2nd Chance Investment | 10/4/2021 | 38,975.00 | LAMAR MEDIA CORP 225-237-1068 LAADVERTISING |
| 2nd Chance Investment | 9/29/2021 | 64,365.00 | LAMAR MEDIA CORP 225-237-1068 LAADVERTISING |
| 2nd Chance Investment | 9/25/2021 | 3,000.00 | LAMAR MEDIA CORP 225-237-1068 LAADVERTISING |
| 2nd Chance Investment | 5/17/2021 | 7,475.00 | LAMAR MEDIA CORP 225-237-1068 LAADVERTISING |
| 2nd Chance Investment | 9/20/2021 | 34,660.00 | LAMAR MEDIA CORP 225-237-1068 LAADVERTISING |
| 2nd Chance Investment | 9/16/2021 | 23,426.00 | LAMAR MEDIA CORP 225-237-1068 LAADVERTISING |
| 2nd Chance Investment | 9/8/2021 | 69,890.00 | LAMAR MEDIA CORP 225-237-1068 LAADVERTISING |
| 2nd Chance Investment | 9/2/2021 | 59,185.00 | LAMAR MEDIA CORP 225-237-1068 LAADVERTISING |
| 2nd Chance Investment | 8/30/2021 | 3,000.00 | LAMAR MEDIA CORP 225-237-1068 LAADVERTISING |
| 2nd Chance Investment | 8/24/2021 | 36,920.00 | LAMAR MEDIA CORP 225-237-1068 LAADVERTISING |
| 2nd Chance Investment | 8/18/2021 | 30,242.00 | LAMAR MEDIA CORP 225-237-1068 LAADVERTISING |
| 2nd Chance Investment | 8/9/2021 | 18,975.00 | LAMAR MEDIA CORP 225-237-1068 LAADVERTISING |
| 2nd Chance Investment | 8/4/2021 | 33,760.00 | LAMAR MEDIA CORP 225-237-1068 LAADVERTISING |
| 2nd Chance Investment | 7/27/2021 | 21,140.00 | LAMAR MEDIA CORP 225-237-1068 LAADVERTISING |
| 2nd Chance Investment | 7/14/2021 | 49,218.00 | LAMAR MEDIA CORP 225-237-1068 LAADVERTISING |
| 2nd Chance Investment | 7/7/2021 | 22,255.00 | LAMAR MEDIA CORP 225-237-1068 LAADVERTISING |
| 2nd Chance Investment | 7/1/2021 | 18,240.00 | LAMAR MEDIA CORP 225-237-1068 LAADVERTISING |
| 2nd Chance Investment | 6/24/2021 | 38,143.00 | LAMAR MEDIA CORP 225-237-1068 LAADVERTISING |
| | **Total** | **636,159.98** | |

EXHIBIT 2                    Page 1 of 1